IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

                              PORTLAND DIVISION

CULLEN JOHNSON PYLE,
                                          Case No. 08-CV-831-ST
          Petitioner,

     v.                                   FINDINGS AND RECOMMENDATION

A.J. SANTOS, Superintendent,
Eastern Oregon Correctional
Institute,

          Respondent.

     Thomas J. Hester, Assistant Federal Public Defender
     101 S.W. Main Street, Suite 1700
     Portland, Oregon 97204

          Attorney for Petitioner

     John R. Kroger, Attorney General
     Jonathan W. Diehl, Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97310

          Attorneys for Respondent


      1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his underlying state conviction for Murder. For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #2) should be denied.

## BACKGROUND

On January 9, 1997, petitioner called 9-1-1 and reported that he had killed his wife. Trial Transcript, p. 11. When authorities arrived at petitioner's residence, they found his wife, Lori Pyle ("Lori"), dead from a gunshot wound to her head. *Id* at 12.

Petitioner was booked into the Coos County Jail where officers took blood and urine samples and administered two intoxilyzer tests showing petitioner's blood alcohol content to be .19% and, three hours later, .14%. *Id* at 67, 367, 853-54. The Oregon State Police conducted a forensic screening of the urine which indicated the presence of benzodiazepine compounds,[1] but the sample was insufficient for confirmatory testing because it had leaked shortly after collection. *Id* at 200; Respondent's Exhibit 128, p. 2. Its toxicological examination of the blood revealed an alcohol level of .18%, but no testing was done for benzodiazepines. Trial Transcript, pp. 204, 753-54; Respondent's Exhibit 125, pp. 3-5.

---

[1] Lori had prescriptions for Prosom and Alpazolam, drugs belonging the benzodiazepines class. Trial Transcript, p. 37; Respondent's Exhibit 126, p. 10.

2 - FINDINGS AND RECOMMENDATION

On April 17, 1997, the State filed a motion *in limine* seeking to admit evidence of petitioner's prior acts of violence against Lori and his former wife. Omnibus Transcript (5/2/1997), pp. 5-11; Respondent's Exhibit 105. The trial court denied the motion, and the State filed an interlocutory appeal.

In May of 1997, petitioner's trial counsel asked Don Williams, the Director of Coast Medical Labs in Coos Bay, to test the blood sample collected by the Coos County Sheriff's Office. Respondent's Exhibit 125, p. 57. Williams signed for the sample on May 23, 1997, but did not perform the requested testing because: (1) the evidence had not been properly preserved; and (2) "the results would have been the same as that of the Oregon State Police Crime Lab." *Id* at 51, 54, 57. Williams' laboratory was apparently not equipped to test for benzodiazepines. *Id* at 54, 58. It is unclear whether Williams ever so advised petitioner's counsel, but it does appear that counsel believed Williams had performed the blood testing as requested. *Id* at 47.

More than a year after receiving the blood sample, Williams discovered it while cleaning out his sample storage and "simply disposed of it as a biohazard . . . not thinking of it as evidence, as it had been there for some time and he believed that the situation had been resolved." *Id* at 58. Williams did not contact petitioner's counsel or anyone else prior to disposing of the sample. *Id;* Trial Transcript, p. 908. During this time, counsel

3 - FINDINGS AND RECOMMENDATION

had not inquired into the blood sample because he "figured trial was going to be a long way down the road and [he] kind of forgot what was going on with the blood sample." Pretrial Hearing (5/3/1999), p. 140.

On July 15, 1998, the Oregon Court of Appeals affirmed the trial court's pretrial order granting petitioner's motion to exclude evidence of his acts of violence against Lori and his former wife. Respondent's Exhibit 105. On December 1, 1998, the Oregon Supreme Court denied review on this issue.

On April 28, 1999, petitioner's counsel moved to withdraw on the basis that petitioner was unable to meet his obligations under their fee agreement. Trial Transcript, pp. 137-38. Petitioner also asked the court to remove counsel and appoint substitute counsel, claiming that counsel had lied to him concerning the evidence that he had been under the influence of benzodiazepines at the time he killed his wife. *Id* at 139. The trial court denied both motions on May 5, 1999 and the case proceeded to a jury trial. *Id* at 145, 147-48.

At trial, petitioner focused his defense on his alleged inability to form the requisite intent to murder Lori based upon the adverse effects of mixing alcohol and benzodiazepines. The jury did not agree and unanimously found petitioner guilty of Murder. *Id* at 1257.

4 - FINDINGS AND RECOMMENDATION

Petitioner filed a direct appeal assigning error to the trial court's refusal to appoint substitute counsel for him. Respondent's Exhibit 109. The Oregon Court of Appeals affirmed the trial court's decision in a written opinion, and the Oregon Supreme Court denied review. *State v. Pyle*, 182 Or. App. 520, 50 P.3d 591, *rev. denied*, 335 Or. 104, 59 P.3d 1279 (2002).

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County which denied relief on all of his claims. Respondent's Exhibit 170. The Oregon Court of Appeals affirmed the lower court without issuing a written opinion, and the Oregon Supreme Court denied review. *Pyle v. Santos*, 215 Or. App. 358, 168 P.3d 1262 (2007), *rev. denied,* 344 Or. 539, 186 P.3d 285 (2008).

Petitioner, appearing *pro se*, filed a Petition for Writ of Habeas Corpus in this court on July 11, 2008, raising more than 40 claims. In his supporting memorandum filed with the assistance of appointed counsel (docket #50), petitioner argues two claims:

>  1. He was denied his Sixth Amendment right to counsel when the trial court forced him to proceed with counsel despite a conflict of interest; and
>
>  2. Trial counsel was constitutionally ineffective for failing to investigate and learn that the State had mishandled the urine sample, resulting in the unavailability of confirmatory testing, and in failing to insure that the blood sample was promptly tested for benzodiazepines and, once turned over to the defense, handled properly and preserved.

5 - FINDINGS AND RECOMMENDATION

Respondent asks the court to deny relief on the Petition because: (1) petitioner has not carried his burden with respect to the unargued claims in the Petition; (2) Ground One is not alleged in the Petition and is procedurally defaulted since it was not fairly presented to Oregon's state courts; (3) all claims are meritless; and (4) the state court decisions denying relief are entitled to deference under 28 U.S.C. 2254(d)(1) and (e)(1).

## FINDINGS

### I. Unargued Claims

Petitioner, proceeding with the assistance of counsel, does not provide argument in support of several claims raised in his *pro se* Petition. As such, he has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

### II. Ground One: Trial Court Error

According to respondent, the Petition does not contain the Ground One claim which alleges trial court error based on denial of petitioner's motion for substitute counsel. The Petition alleges as follows:

> Petitioner is entitled to relief on the grounds that he is being unlawfully detained in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United State Constitution, because he was denied due process when the state failed to disclose exculpatory evidence and when he was denied

6 - FINDINGS AND RECOMMENDATION

>       the effective assistance of trial and
>       appellate counsel and he is serving an
>       unlawful sentence as set forth in paragraphs
>       4.7 to 4.10 of this petition and the conduct
>       of trial and appellate counsel prejudiced the
>       outcome of petitioner's case.

Petition, p. 12.

Paragraphs 4.7 through 4.10 all concern at least 44 claims of ineffective assistance of trial and appellate counsel which petitioner claimed to have raised during his PCR proceedings. None of these PCR claims relate to the claim of trial court error petitioner now argues as Ground One. The only other claim in the Petition alleges that the State failed to disclose exculpatory information, a claim which also is unrelated to Ground One. As a result, the court is left to conclude that petitioner failed to raise his Ground One claim in his Petition as required by Rule 2 of the Rules Governing Section 2254 Cases.

In response, petitioner argues that the court issued a revised scheduling order under which he could have timely file an amended petition at the time he filed his supporting memorandum. This argument simply highlights the fact that petitioner, with appointed counsel to assist him, had the opportunity to file an amended pleading but elected not to do so. Contrary to petitioner's assertion, a memorandum in support of a petition is not, itself, an amended petition. Thus, relief on Ground One should be denied.

///

///

7 - FINDINGS AND RECOMMENDATION

### III. Ground Two:  Ineffective Assistance of Counsel

Ground Two alleges that petitioner's trial counsel was constitutionally ineffective when he failed to: (1) learn that the State had mishandled the urine sample; and (2) ensure that the blood sample was properly tested for benzodiazepines.

### A.  Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court

8 - FINDINGS AND RECOMMENDATION

may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

   B.   **Analysis**

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.

   9 - FINDINGS AND RECOMMENDATION

A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S. Ct. at 1420.

During cross-examination at trial, the State's criminalist ("McNeely") testified that the limited urine sample he received was inadequate to confirm the initial test result tending to show the presence of benzodiazepines. According to petitioner, his counsel did not know that the State had mishandled the sample, causing it to leak to the point that confirmatory testing for benzodiazepines could not be performed. He claims that his counsel thereby failed to adequately cross-examine McNeely when he did not highlight that it was the State's mishandling of the sample which prevented a confirmatory test.

Petitioner also faults his trial counsel for failing to pursue prompt testing of the blood sample and failing to maintain an awareness of its location or condition during the course of the State's interlocutory appeal. The PCR trial court resolved petitioner's Ground Two claim as follows:

> The issue relating to the evidence is probably not as problematical as it might seem. The State's personage was lax in their responsibility of preserving the evidence. They certainly – and there's absolutely no evidence whatsoever to indicate that they were

10 - FINDINGS AND RECOMMENDATION

>intentional insofar as any destruction of evidence, either the leakage of the urine sample or the deterioration of the blood sample – but the evidence was present insofar as the blood alcohol was concerned. The State had those determinations both from breath tests taken – I think one was taken at one time, and one was taken three or four hours later - and the blood alcohol.
>
>The biggest problem, if any, arises from the drug finding, determination of presence in, I believe, the urine sample, but it was impossible with what they had available to test to make a determination as to quantity and the time when the drug had been ingested.
>
>The evidence is not rendered inadmissible by the fact that it was not available to the petitioner for subsequent testing, and, quite frankly, it appears that as a result of this situation, which was brought to the jury's attention, it probably was a potential benefit to the petitioner in order to argue all sorts of things about this terrible drug that had led him into a state of mind over which he had no control over his actions and reactions.
>
>It probably was not of great benefit to the State to merely show that there was some presence of this in his system, but there was no possibility of determining whether or not it had been ingested recently so that it still might affect him, or whether it had been ingested sometime before, I think out to 48 hours or so before, is my recollection of the general testimony. I don't find that to be an error which would prejudice the petitioner insofar as his case was concerned, and I certainly don't lay the responsibility on counsel insofar as being inadequate in that particular.

Respondent's Exhibit 169, pp. 9-10.

11 - FINDINGS AND RECOMMENDATION

The PCR trial court bolstered this well-reasoned conclusion that petitioner had not been prejudiced by any misconduct on the part of counsel by further explaining:

> And I think the jury was totally correct, that there wasn't sufficient impairment of his condition, and I think they found that based upon his alcohol consumption and maybe drug consumption, but the tapes that were listened to, or his conversation with the police dispatch, 9-1-1, would certainly represent that he knew what was going on, what was happening, that he was responsible. When you call up 9-1-1 and say, "hey I just murdered my wife," or words to that effect, "She was shot," it seems to show that a person has a pretty good idea of what's going on around them and that they're responsibility is at that particular time.
>
> In think the jury was totally correct insofar as their assessment of his intoxication. It was enough to cause him to be an obnoxious, mean person, but it certainly wasn't enough to alleviate his responsibility for his acts or his conduct, and I find the evidence is overwhelming in that respect, as I find the evidence to be overwhelming insofar as his guilt is concerned of the crime of murder.

*Id* at 13-14.

As illustrated above, the PCR trial court found that the State's mishandling of the urine sample was brought to the jury's attention. Petitioner has not introduced clear and convincing evidence sufficient to overcome this factual finding pursuant to 28 U.S.C. § 2254(e)(1), nor does he argue that it was an unreasonable factual determination in light of the evidence presented. Taking this factual finding as true, it is difficult to see how counsel

12 - FINDINGS AND RECOMMENDATION

could have materially altered the outcome of petitioner's case had he raised the issue again during McNeely's cross-examination.

Moreover, the urine sample was not valuable to the benzodiazepine inquiry. According to petitioner's own expert affidavit submitted in support of this PCR claim, "[t]he amount [of benzodiazepine] ingested and [its] psychological effects are impossible to discern [from a urine sample]." Respondent's Exhibit 132, p. 2. This would seem to make confirmatory testing of the urine sample largely irrelevant. Thus, it cannot be said that counsel's failure to press McNeely on this issue dramatically affected the case.

With respect to the loss of the blood sample, petitioner's counsel was under no constitutional obligation to have the sample tested while the case was stayed during the interlocutory appeal. Even if he was, it is apparent from his correspondence with Williams that he had specifically asked for the blood to be tested and fully expected the test to encompass benzodiazepines. In a letter dated March 2, 1999, he wrote Williams as follows:

> If you will recall, you did blood testing on the sample provided by the Sheriff's Office of Cullen Pyle. I need to determine the thresh hold or sensitivity level test that was used to determine whether or not benzodiazepine was in the blood of [petitioner]. Hopefully you can review the file and let me know. If I recall, this may have been sent to Eugene for processing.

Respondent's Exhibit 125, p. 47.

13 - FINDINGS AND RECOMMENDATION

The loss of the blood evidence cannot be attributed to petitioner's counsel. While counsel could have kept closer tabs on the blood sample during the interlocutory appeal, he successfully secured it for the defense and entrusted it to an expert (Williams) for testing. Williams, however, never called the Coos County Sheriff's Office or anyone else prior to disposing of the sample. *Id* at 54. When the expert took the initiative and destroyed the blood sample without instruction or permission, it is difficult to conclude that counsel's performance fell below an objective standard of reasonableness

But even assuming that the expert's destruction of the blood sample was trial counsel's fault, it is pure speculation as to what testing would have revealed. In fact, when Williams received the sample in early 1997 from the Coos County Sheriff's Office Evidence Custodian, "the sample had not been prepared properly so he could not do any testing of the sample." *Id* at 51. Williams also opined that any testing results "would have been the same as [those of the Oregon State Police]." *Id* at 54. Any speculation as to how Williams or another expert might have testified regarding the blood sample had it actually been tested does not establish prejudice. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Moreover, the PCR trial court properly concluded that the evidence in the case overwhelmingly showed that petitioner was responsible for his actions. Thus, even if the blood tested

14 - FINDINGS AND RECOMMENDATION

positive for benzodiazepines, the remainder of the evidence conclusively showed that petitioner was sufficiently aware of what he was doing to form the intent to commit murder. He is therefore unable to demonstrate prejudice.

Based on the foregoing, the PCR trial court's decision did not involve an unreasonable determination of the facts in light of the evidence presented and was neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #2) should be DENIED, and a judgment should be entered dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 23, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

///

15 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will go under advisement.

DATED this 6th day of May, 2011.

<pre>
                        s/   Janice M. Stewart
                             Janice M. Stewart
                             United States Magistrate Judge
</pre>

16 - FINDINGS AND RECOMMENDATION